Alfred G. Rava, SBN 188318
Rava Law Firm
3667 Voltaire Street
San Diego, CA 92106
Phone: 619-238-1993
Email: alrava@ravalaw.com

Attorney for Plaintiff Allan Candelore
and the Proposed Classes

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN CANDELORE on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUBY CORP doing business as ASHLEY MADISON; RUBY LIFE, INC. doing business as ASHLEYMADISON.COM; and DOES 1 through 10,<br><br>Defendants. | Case No. **'25CV1263 H    MSB**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **Violation of Civil Code § 51 (The Unruh Civil Rights Act);**<br>2. **Violation of Civil Code § 51.5; and**<br>3. **Violation of Civil Code § 51.6 (The Gender Tax Repeal Act of 1995)** |

Plaintiff Allan Candelore, on behalf of himself and all others similarly situated, brings the following allegations of unlawful discrimination against Defendant Ruby Corp doing business as Ashley Madison, and Ruby Life, Inc. doing business as ashleymadison.com (collectively "Ashley Madison" or "Defendants") for charging male consumers more than female consumers for the same thing, i.e., to use Ashley Madison's online matchmaking services. In addition, Ashley Madison has been providing certain functionality of its services to only female users and thus denies full and equal accommodations, advantages, facilities, privileges, or services, on the basis of sex and gender identity.

## **PARTIES**

1.     At all times relevant hereto, Plaintiff Allan Candelore has been a resident of San Diego and a citizen of the State of California, a heterosexual man who has identified himself as a male, and has been over the age of 21.

2.     On information and belief, at all times relevant hereto, Defendant Ruby Corp has been a corporation organized under the laws of the province of Ontario, Canada, and has been doing business throughout California, including in San Diego County, California, as Ashley Madison.

3.     On information and belief, at all times relevant hereto, Defendant Ruby Life, Inc. has been a corporation organized under the laws of the province of Ontario, Canada, and has been doing business throughout California, including in San Diego County, California, as www.AshleyMadison.com.

4.     Throughout this Complaint, Plaintiff shall refer to both the app version and web-based version of Defendants' business establishment collectively as "Ashley Madison" unless otherwise indicated.

5.     On information and belief, at all times relevant hereto, Ashley Madison was a business establishment – an interactive online platform – according to Civil Code sections 51 (the codification of California's Unruh Civil Rights Act), 51.5, and 51.6 (codification of California's Gender Tax Repeal Act of 1995) that intentionally created, advertised, marketed, employed, managed, and/or at least aided the unequal treatment and discrimination of Ashley Madison's subscribers and of those individuals who visited an Ashley Madison website or app with the intent to use Ashley Madison's services and encountered terms or conditions that excluded these individuals from full and equal access to Ashley Madison's services based on the sex and/or gender identity of the subscribers and those individuals who visited an Ashley Madison website or app with the intent to use Ashley Madison's services.

6.     The true names and capacities of Does 1 through 10 are unknown to Plaintiff. When their true names and capacities are learned, Plaintiff will amend this

Class Action Complaint for Damages and Injunctive Relief

complaint accordingly. Plaintiff is informed and believes, and on that basis alleges, each fictitiously named defendant is responsible in some way for and at least aided the occurrences herein alleged, and those defendants proximately caused Plaintiff and the members of the Class damages. Each reference in this complaint to "Defendants," "Defendant," "Ashley Madison," or a specifically named defendant refers to all defendants sued under fictitious names.

7.    Unless otherwise alleged, whenever reference is made in this complaint to any act of "defendant," "defendants," or to a specifically named defendant, such allegation shall mean that each defendant acted individually and jointly with the other defendant named in the complaint.

8.    Unless otherwise alleged, whenever reference is made in this complaint to any act or omission of any corporate or business defendant, such allegation shall mean that such corporation or other business defendant committed or omitted to act as in this complaint through its officers, members, directors, stockholders, employees, agents, and/or representatives while they were acting within the actual or apparent scope of their authority.

9.    At all relevant times alleged herein, each defendant has been each the agent, alter-ego, representative, partner, joint venturer, employee, or assistant of the other defendants and has acted within the course and scope of said agency, alter-ego, representation, partnership, or joint venture with the knowledge, notification, authorization, and consent of each of the other defendants.

## **JURISTICTION AND VENUE**

10.    Jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California, both Defendants are citizens of Canada, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 are present, thereby giving this Court jurisdiction.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein has occurred within this judicial district; and (ii) Defendants have conducted business within this judicial district at all times relevant.

12.     Personal jurisdiction is appropriate because Ashley Madison purposefully directed and/or expressly aimed its acts and actions complained of herein at California and purposefully availed itself of the benefits of doing business within California pursuant to *Briskin v. Shopify*, --- F.4th ---- 2025 WL 1154075 (9th Cir. 2025), and at least as follows:

(i). Ashley Madison deliberately targets its matchmaking service at California by using geolocation technology to know that users' mobile devices are in California. Indeed, Ashley Madison specifically notes in section 12(C) of its terms and conditions that it uses "Geo-Location Services" (https://www.ashleymadison.com/en-us/terms/, last updated January 20, 2025; visited May 14, 2025):

> **Geo-Location Terms**
> Our Services include and make use of certain functionality and services provided by third parties, which allow Ashley Madison to include maps, geocoding, places and other content from Google as part of the Services (the "Geo-Location Services"). Your use of the Geo-Location Services included in our Services is subject to Google's then-current: (i) Google Maps/Google Earth Additional Terms of Service (google.com/intl/en_us/help/terms_maps.html); and, (ii) Google Privacy Policy (google.com/policies/privacy/).

(ii). Ashley Madison uses cookies and other tracking technologies to recognize individual users and remember important user information. See https://www.ashleymadison.com/cookies, last updated January 29, 2025; visited May 14, 2025 ("This Policy explains what cookies are, as well as other tracking technologies and different types of storage. It discusses which types of cookies or other tracking devices may be placed on your device when you visit our website, and how we use these, as well as storage. We hope that this Policy helps you understand and feel more confident about our use of these technologies.... These cookies or local storage data

Class Action Complaint for Damages and Injunctive Relief

allow our website to remember information that changes the way the site behaves or looks, such as your preferred language or the region where you are located.")

(iii).  Ashley Madison regularly employs, utilizes, or otherwise purposely and proactively engages in marketing via paying for and subscribing to Google Search Ads that specifically target California and consumers in the state, an example of which is shown below (Google search performed May 14, 2025):



Thus, if a person were to search "California marital affair website" on Google during the below Class Period and continuing through the date of trial, the first result on the first page of search results is Ashley Madison's website with an advertisement of California as a "Destination" for "a Local Affair" and that the service is "100% free for women." Google explains to its ad customers such as Ashley Madison how these ads are expressly aimed or targeted based on geographic locations on its Google Ads Help page: "Target ads to geographic locations" ("Google Ads location targeting allows your ads to appear in the geographic locations that you select. Locations may include countries, areas within a country, and a radius around a location or location groups that can include places of interest, your business locations and/or tiered demographics.";
https://support.google.com/google-

Class Action Complaint for Damages and Injunctive Relief

ads/answer/1722043?hl=en#:~:text=Google%20Ads%20location%20targeting%20all ows,locations%20and%2For%20tiered%20demographics (visited May 14, 2025)).

These ads – purchased by Ashley Madison and tailored to and expressly aimed at or targeted to the local California market – specifically mention California as a "destination" so that prospective customers who wish to have a marital affair in California or with a Californian will see the ads and click on the link to Ashley Madison's website or app, i.e., Ashley Madison uses a person's GPS location and/or IP address to know which ads to send to that person based on that person's search terms.

Simply put, the targeted marketing ads match the location of the people searching for specific services (identified by the user's search terms) to the location where those services can be provided. Ashley Madison's targeted marketing ads work the same way by specifically targeting the state of California as a location to find potential paramours. It would be a waste of time and advertising money for a seasoned and sophisticated company such as Ashley Madison if those ads were to appear in search results in jurisdictions where such ads would produce no or *de minimis* revenue, e.g., countries where such services are illegal, or sparsely-populated areas such as rural Wyoming, or states that do not have three of the top twenty cities for infidelity as Ashley Madison has determined California has[1]. So, the logical, common-sense inference – supported by further evidenced cited below – is that Ashley Madison paid for the Google Search Ads specifying California to expressly aim and target its matchmaking at California. Thus, Ashley Madison targets California with these paid Google Search Ads because Ashley Madison knows the ads will be seen by people in California, or people who want to travel to California for an affair, which produces a return on the advertising investment when those people subscribe to Ashley Madison's services.

(iv).    Because Ashley Madison purposefully targets and expressly aims its

---

[1]  https://www.businessinsider.com/cities-with-most-cheaters-ashley-madison-2019-11 "While New Jersey cities hold the top two spots on the list, California is the state with the most unfaithful cities overall." (Visited May 14, 2025.)

---

matchmaking service at California, Ashley Madison wrote its terms and conditions to specifically address California consumer protection laws, including rights of cancellation (section 5(D)) and consumer notices and waivers (section 15(A) under "Special State and Country Terms.") See https://www.ashleymadison.com/app/public/tandc.p?c=1 (last updated January 20, 2025; visited May 14, 2025.)

Section 5(D) states:

> Cancellations (also known as Right of Withdrawal) and Refunds
> Your rights will differ depending upon: …
> (iii) The geographic location where you reside when you sign up for the Services. …
> > iii. For members residing in Arizona, *California*, Connecticut… the Cancellation Period ends at midnight on the third (3rd) business day following the date of your purchase. … (Emphasis added.)

Section 15 states:

> Special terms apply in certain states and countries. In addition to specific jurisdictional provisions mentioned elsewhere in these Terms, the following provisions apply:

- **California**

  - **California Consumer Notice**

Under California Civil Code Section 1789.3, California members are entitled to the following consumer rights notice: The Platform and Service are provided by ruby Life Inc. d/b/a Ashley Madison. If you have a question or complaint regarding the Platform or Service, please contact Customer Service at support@ashleymadison.com. You may also contact us by writing to us at ruby Life Inc., PO Box 67027, Toronto, Ontario, Canada M4P 1E4, Attention: Customer Service. California residents may reach the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs by post at 1625 North Market Blvd., Suite N112, Sacramento, CA 95834 or by telephone at (916) 445-1254 or (800) 952-5210 or Hearing Impaired at TDD (800) 326-2297 or TDD (916) 928-1227.

- **Waiver**

IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH SAYS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Furthermore, Ashley Madison wrote its Privacy Policy to specifically address its purposeful direction to and activities in California (https://www.ashleymadison.com/privacy; last updated January 20, 2025; visited May 14, 2025.) Ashley Madison writes in section 5 of its Privacy Policy, "HOW WILL WE SHARE YOUR INFORMATION?" Ashley Madison concedes it provides members' Personal Data to advertising agencies and marketing agents:

> We may provide Personal Data to third parties in the following limited circumstances:
> - To **trusted third parties**, to assist us in the provision of the Services and the operation of our business.
>   - We may share your Personal Data with third-party service providers that we have **engaged to perform services on our behalf**, based on our instructions, such as to our parent, subsidiary or sister/affiliate companies (to provide you with better and safer services, with greater efficiency, and to improve your chances of building significant relationships with others on one or more of our platforms), or to advertising agencies, marketing agents, credit card payment processors, data processing and storage companies or organizations which provide administrative and support services to us.

As explained further below, that Personal Data is provided to advertising agencies and marketing agents such as Google so those agencies/agents can target certain demographics in certain locations, including California. Moreover, in section 16 of Ashley Madison's Privacy Policy, "IMPORTANT ADDITIONAL INFORMATION

FOR CALIFORNIA RESIDENTS," Ashley Madison goes on to explain specifically to California residents how Ashley Madison collects numerous items of regulated Personal Data – including the address, geolocation, and "Characteristics of protected classifications under California or federal law such as race, sex, and age" of its members – from California residents and uses that information for commercial purposes as follows:

| Categories of personal information | Do we collect? | Do we disclose for business purposes? | Do we sell your Personal Data? | Sold or Disclosed for a business or commercial purpose in the prior 12 months? |
|---|---|---|---|---|
| **NAME, CONTACT INFORMATION AND IDENTIFIERS**: Identifiers such as name, nickname, postal address, unique personal identifier, online identifier, Internet Protocol (IP) address, email address, account name, username, passwords. | YES | YES | NO | We may disclose this information to our payment processors for the following business purposes:<br><br>• To prevent credit card fraud<br><br>• To respond to chargeback claims<br><br>• To process customer refund inquires<br><br>We may use one's IP address for fraud detection and data security.<br><br>We may disclose information contained in your member-facing profile – including your username – to a third-party vendor for the purpose of assisting our moderators in finding activity that contravenes our Code of Conduct. |
| **CUSTOMER RECORDS**: Paper and electronic customer records containing | YES | YES | NO | We may disclose this information to our payment processors for the following business purposes: |

Class Action Complaint for Damages and Injunctive Relief

| | | | | |
|---|---|---|---|---|
| personal information, such as name, physical characteristics or description, address, telephone number, bank account number, credit card number. | | | | <ul><li>To prevent credit card fraud</li><li>To respond to chargeback claims</li><li>To process customer refund inquires</li><li>We may disclose a single account identifier – which will not be enough, on its own, to identify you – to certain third-party affiliates, for fraud detection purposes.</li></ul>We may disclose information contained in your member-facing profile – including descriptors of yourself – to a third-party vendor for the purpose of assisting our moderators in finding activity that contravenes our <u>Code of Conduct</u>. |
| **PROTECTED CLASSIFICATIONS**: Characteristics of protected classifications under California or federal law, such as race, sex, and age. | YES | YES | NO | <ul><li>We may disclose aggregate data about age groups/range segment conversion data to certain performance marketing campaigns to confirm payment-qualifying transactions.</li><li>Members must identify their gender in order to use the Services and for the purpose of being presented with profiles of other members</li><li>Members may choose to provide other information, such as their race, to better describe themselves to other members of the Services.</li></ul>We may disclose information contained in your member-facing profile – including descriptors of yourself – to a third-party vendor for the purpose of assisting our moderators in finding activity that contravenes our <u>Code of Conduct</u>. |
| **BIOMETRIC INFORMATION**: | YES | YES | NO | NO |

10

Class Action Complaint for Damages and Injunctive Relief

| GEOLOCATION DATA: City of residence. | YES | NO | NO | NO |
|---|---|---|---|---|

Per the California Consumer Privacy Act ("CCPA"), Ashley Madison is not required to collect many of the categories of information listed above, but Ashley Madison is required to disclose the information it does collect from and about Ashley Madison subscribers who reside in California. The fact that Ashley Madison collects this information from and about Ashley Madison subscribers who reside in California and uses it for business purposes not only demonstrates Ashley Madison does substantial business in California, but also shows that Ashley Madison targets California to obtain this information. Moreover, in the section of the chart reproduced above titled "Characteristics of protected classifications under California or federal law such as race, sex, and age," Ashley Madison concedes, "We may disclose aggregate data about age groups/range segment conversions data to certain performance marketing campaigns..." Ashley Madison collects information from and about Ashley Madison subscribers who reside in California, such as these Californians' race, sex, and age, and then discloses those personal characteristics to third parties for marketing campaigns in California.

Ashley Madison is thus aware of the extent to which it targets and expressly aims its matchmaking service at California – so much so that Ashley Madison attempts to protect itself legally by citing and referring its actual and prospective California users to California consumer protection laws and notices in its online terms and conditions and Privacy Policy so Ashley Madison may comply with State of California laws.

(v). Ashley Madison operates an affiliate marketing program that includes California affiliates that market on Ashley Madison's behalf (https://affiliates.ashleymadison.com/). Affiliate marketing involves referring a product or service by sharing it on a blog, social media platform, podcast, or website. The affiliate earns a commission each time someone makes a purchase through the unique affiliate link associated with its recommendation. For example, a celebrity may post a

Class Action Complaint for Damages and Injunctive Relief

link to Company X's product or service on the celebrity's Instagram page. If a celebrity's follower clicks the link and purchases the product or service, Company X pays the celebrity/affiliate a commission for having successfully marketed Company X's product or service. Ashley Madison does this and invites affiliates to "add us to your revenue stream" through various methods including a CPA Program (pay per paying user), CPL Program (pay per lead), and CPI Program (pay per install). On information and belief, Ashley Madison specifically targets California through its affiliate marketing program and has hundreds of California affiliates.

(vi). Ashley Madison was sued in 2020 in *Ashley Nichols v. Ruby Corp. et al.,* U.S. District Court for the Southern District of California Case No. '20CV0491 BAS KSC for allegedly violating anti-SPAM laws. The allegations in that case involved Ashley Madison expressly targeting California by sending unsolicited emails to people in California, which indicates an intentional act to purposefully direct its advertisements for its matchmaking services to California. As noted herein, Ashley Madison continues to direct and aim its advertisements to California. Thus, on information and belief, Ashley Madison cannot claim it does not know it purposely is and has been targeting California during the Class Period.

(vii). In or around late 2015 to early 2016, Ashley Madison's former Chief Operating Officer, Rizwan Jiwan, was interviewed for a report that "examines Ashley Madison's Marketing strategies and recommends ways to increase traffic and profitability," and has the objective of formulating "a comprehensive Marketing Strategy that will bring more customers to the site." See https://alejandro-tafur.squarespace.com/s/Ashley-Madison.pdf, last visited May 14, 2025. The report further reads, "Our primary research consisted of a conference call with Ashley Madison's COO, Rizwan Jiwan, about the company's Marketing Strategy, competitors, and challenges. (Appendix A) (*sic*) Through this interview we established who Ashley Madison needs to *target*, how they can advertise, *and where they need to seek potential customers*." (Emphasis added.) The report continues: "Other Recommendations. *Search*

*Engine Targeting*. Most people, when confronted with a problem, turn to one source of knowledge for help: the Internet. By *targeting* search engines and *buying ad space* for commonly searched terms (unhappy marriage, bad sex life, affair, divorce, etc.), Ashley Madison could put itself in a prime position to capture its *target* audience." (Emphasis added.)  Finally, in section 4 of the Appendix, the report quotes a Q&A with Mr. Jiwan as follows: "Q: 'When/where do you get the most member sign-ups?' A: 'The day after New Years is definitely up there. After any holiday really, but New Years specifically. The main theory is that you're you're (sic) spending your whole weekend with your spouse, your in-laws, which makes you want to make a resolution to change your life. Meanwhile, *California is definitely one of our biggest markets*.'"  (Emphasis added.) The report uses the word "target" repeatedly, discusses purchasing targeted search engine ads, and when asked "where do you get the most member sign-ups," Mr. Jiwan provided one, and only one, location: California.

(viii).  Ashley Madison's X (formerly Twitter) page boasts there are 80 million Ashley Madison subscribers. Upon information and belief, and based on the common sense or fact that California is America's most populous state with approximately 40 million residents, thousands of those subscribers are located in California doing business with and exchanging communications, money, and financial information such as credit card numbers, and computer files with Ashley Madison's offices and servers on a daily basis. (https://x.com/ashleymadison?lang=kn) – "The world's leading married dating website with more than 80 million members worldwide. Life is Short. Have an Affair" (visited May 14, 2025.))  On information and belief, California is Ashley Madison's biggest market by state. Thus, when Ashley Madison lists on its blog the "Top 20 U.S. Cities for Infidelity During Cuffing Season," (https://www.cbsnews.com/sanfrancisco/news/fremont-oakland-top-cities-list-infidelity-ashley-madison/, visited May 14, 2025)  including an interview with Isabella Mise, Ashley Madison's Senior Director of Communications according to her LinkedIn page (visited May 14, 2025), boasting seven of the top 20 cities being in California,

Class Action Complaint for Damages and Injunctive Relief

Ashley Madison is purposefully releasing proprietary information collected from its users with the goal of informing prospective customers where the action is – in California. The intentional publication of this information – that there are many potential paramours in California – is purposely directed and expressly aimed at California as a location for affairs for both California residents and people outside of California who want to have an affair. As such, personal jurisdiction is supported in this case because Ashley Madison clearly does business over the Internet and enters into contracts with thousands of people who reside in or visit California – business that involves the knowing and repeated transmission of computer files over the Internet – all of which is facilitated and/or encouraged by Ashley Madison's purposeful targeting of prospective California customers via advertisements, marketing, posts on its blog and social media, and media interviews.

(ix). In January 2014, Ashley Madison's predecessor corporate entities, Avid Media and Avid Dating, removed the case of *Lewis v. Avid Dating Life, Inc., et al.*, C.D. Cal. Case No. 2:14-cv-00763-DMG-MRW from California state court to the Central District Court pursuant to the Class Action Fairness Act of 2005. The *Lewis* Case involved the same allegations and claims at issue in the present case: the *Lewis* Case involved a putative class action against Avid Media and Avid Dating as then-owners and operators of Ashley Madison for gender and sex discrimination under the Unruh Act, the Gender Tax Repeal Act of 1995, California Civil Code § 51.5, and unfair competition.

Ashley Madison was also sued in a virtually identical case in 2022 in the Southern District of California, *Crouch v. Ruby Corp et al*, case no. 3:22-cv-00711-MMA-JLB. In that case, the District Court ruled that Ashley Madison knew its discriminatory pricing scheme was illegal in California:

The third part of the *Calder* test is satisfied when the defendant's "intentional act has foreseeable effects in the forum." Id. (internal quotation marks and citation omitted). The intentional act of creating an allegedly discriminatory

14

---

Class Action Complaint for Damages and Injunctive Relief

pricing/membership business model certainly had foreseeable effects in California. There is no genuine dispute that Defendants have some amount of subscribers in California. To be sure, they represented on their blog and on Twitter that three of the top 20 cities in the United States for infidelity are in California, see Doc. No. Doc. No. 14 at 9, and it is reasonable to infer that this data came from a statistical review of Ashley Madison's subscriptions. Further, California has codified numerous laws prohibiting this exact type of business behavior and it is a heavily litigated area of state law. Moreover, Defendants' predecessors were sued in 2014 on a virtually identical basis and theory of liability presented in the case here: that Ashley Madison discriminates on the basis of sex and gender by not permitting men to communicate with women without purchasing credits, while women can communicate with men for free. See Pl. Ex. 4. Consequently, not only was it foreseeable that this intentional act would harm Californians' statutorily protected rights to be free from gender and pricing discrimination, but viewing the evidence and allegations in Plaintiff's favor at this juncture, Defendants likely did know that such harm would result.

(*Id.* at Doc. 20, November 7, 2022.)

As a result of these cases, it was foreseeable to Ashley Madison that the intentional act of gender price discrimination would harm Californians' statutorily protected rights to be free from such discrimination. Nevertheless, Ashley Madison continued the same course of conduct anyway, all the way through the Class Period, which demonstrates an ongoing, conscious intent by Ashley Madison to target California with its discriminatory pricing scheme. In other words, after Ashley Madison was sued in the *Lewis* Case in 2014, and then in the *Crouch* case in 2022, Ashley Madison had to make a choice whether to continue its discriminatory pricing scheme in California or switch to a gender-neutral, non-discriminatory alternative instead. The fact that Ashley Madison intentionally chose to continue discriminating, despite the District Court in the *Crouch* case specifically ruling, "California has codified numerous laws

Class Action Complaint for Damages and Injunctive Relief

prohibiting this exact type of business behavior," demonstrates that such conduct is not random, isolated, or fortuitous.

(x).   Ashley Madison purchased a billboard ad near Los Angeles International Airport. Ashley Madison's founder and former CEO Noel Biderman said he chose the high-traffic location because he was looking to expand Ashley Madison in Los Angeles, i.e., target California residents.   www.huffpost.com/entry/kim-jong-un-billboard-ashley-madison-lax-airport_n_1703565 (visited May 14, 2025.)

To summarize, this Court has specific personal jurisdiction over Ashley Madison because Ashley Madison has continuously and purposely directed and expressly aimed the intentional and discriminatory acts alleged herein at California and clearly does business in California by operating an interactive platform. Ashley Madison knows – and several of its executives have confirmed publicly over the years – that California is where the action is, which explains why Ashley Madison targets California with its advertisements, marketing, data collection, and commercial activities. As the Ninth Circuit en banc panel wrote in *Briskin*, "We therefore hold that an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not 'random, isolated, or fortuitous,'' [citations omitted] even if that platform cultivates a 'nationwide audience[] for commercial gain.'"

## NATURE AND BASIS OF CLAIMS

13.     This is a straightforward case of sex-based price discrimination in violation of California Civil Code sections 51, 51.5, and 51.6 and two unanimous California Supreme Court opinions, *Koire v. Metro Car Wash,* 40 Cal.3d 24 (1985) and *Angelucci v. Century Supper Club,* 41 Cal.4th 160 (2007), which held that price discrimination based on sex violates the Unruh Civil Rights Act.

14.     Ashley Madison is a dating app or website, the former being mainly accessed by cell phones and the latter is at www.AshleyMadison.com.

Class Action Complaint for Damages and Injunctive Relief

15.    Ashley Madison makes use of its subscribers' geo-location to assist in the creation of the subscribers' profiles and find prospective matches for each subscriber for which the subscriber can then initiate contact. Creating an account on Ashley Madison is free. However, unlike well-known online dating sites such as Match.com, Ashley Madison's business model is based on credits rather than monthly subscriptions. Ashley Madison allows users to set up their accounts for free, but users cannot communicate with each other unless they become a "Full Member," i.e., they must purchase credits. As noted above, Ashley Madison advertises that its services are "100% free for women," which obviously means men are the only users who must pay. Thus, for a conversation between two members, one of the members – always the man in male/female conversations – must first purchase and then spend credits to communicate with the woman. Any follow-up messages between the two members are free after communication has been initiated. See https://help.ashleymadison.com/en/articles/270989-faq, visited May 14, 2025.

16.    Ashley Madison prohibits all men – be they heterosexual, nonbinary, or transgender – from initiating contact with any women without first purchasing credits and then using those credits to initiate contact with women. Women never have to pay to communicate with men. Instead, if a woman wishes to initiate contact with a man, she sends a "collect" message indicating interest, then the man is required to use his credits to open the woman's collect message. Then, if the man wishes to respond, he is required to spend even more credits to start the conversation in the same fashion as when a man initiates contact in the first place. Thus, regardless of whether a man initiates contact with a woman or a woman initiates contact with a man, the man is always the one who pays, the woman never does.

17.    Ashley Madison's price discrimination has violated three of California's civil rights statutes, California Civil Code sections 51, 51.5, and 51.6, by denying heterosexual, nonbinary, and transgender men full and equal accommodations, advantages, facilities, privileges, or services – and discriminating against them, on the

Class Action Complaint for Damages and Injunctive Relief

basis of sex and gender identity – while simultaneously providing women full access to Ashley Madison's services without making women pay.

18.    On information and belief, this disparate, sex- and gender identity-based discrimination has been the business model for Ashley Madison's dating app since its inception over twenty years ago, thus indicating Ashley Madison is liable for thousands, if not tens or hundreds of thousands of violations or offenses of California Civil Code sections 51, 51.5, and 51.6.

19.    Moreover, Ashley Madison denies certain functionality to male uses that it provides to female users. See, e.g., https://help.ashleymadison.com/en/articles/267073-using-ashley-madison#h_1f8f43664a (visited May 14, 2025)

Quick Reply:

| help.ashleymadison.com/en/articles/267073-using-ashley-madison#h_1f8f43664a | | |
|---|---|---|
| | **Quick Reply Messages (female only)** | Female profiles can send custom or pre-composed automatic replies in response to Winks and Favorites. Manage → |

| help.ashleymadison.com/en/articles/267073-using-ashley-madison#h_a31788c90e | |
|---|---|
| | **Quick Reply Messages** |
| | Female profiles can send custom or pre-composed automatic replies in response to unreplied Winks and Favorites to help them manage their messages more efficiently. More → |

Collect Messages:

| help.ashleymadison.com/en/articles/267073-using-ashley-madison#h_a31788c90e | |
|---|---|
| | **Collect Messages** |
| | 💡 To read or respond to any messages, you must be a Full Member. |
| | Collect Messages let guest Members connect with Full Members when they don't have enough Credits to initiate contact. Think of it like a collect call—the receiving Member pays the fee. Male Members cannot send Collect Messages on Ashley Madison®. |

Local Match Messages:

Class Action Complaint for Damages and Injunctive Relief

help.ashleymadison.com/en/articles/267073-using-ashley-madison#h_a31788c90e

**Local Match Messages**

⚠️ Local Match Messages aren't personalized and don't imply that you have shown specific interest in any of the Members receiving these notifications.

Local Match Messages are pre-composed messages automatically sent on a Member's behalf about potential matches.

▼ Managing Local Match Messages

**Sending Local Match Messages** *(females only)*

**iOS and Android**

1. Click on the **menu** [≡] in the top-left corner.
2. Then tap on `Settings`.
3. Then `Profile Options`.
4. Enable or disable `Send local match messages`.

**Web Browser**

1. Click on the **menu** [≡] in the top-left corner.
2. Then on `Settings`.
3. Then `Security & Privacy`.
4. Enable or disable `Contact Potential Matches for Me`.

20.     Ashley Madison specifically provides terms and conditions on its website, cited above in paragraph 19, that male members cannot send collect messages on Ashley Madison. This is because the recipient of a collect message in such a situation would be a woman, meaning the woman would have to purchase credits to open a collect message from a man. But because Ashley Madison's services are "100% free for women," giving men the ability to send women a collect message – which she would be required to pay for – would be pointless. Therefore, Ashley Madison completely prohibits men from sending collect messages to women at all, thus making it clear from the terms and conditions on its website that only men are required to pay for Ashley Madison's services.

21.     Despite these and other California anti-discrimination statutes, two California Supreme Court opinions specifically holding that sex-based pricing practices violate Civil Code sections 51, 51.5, and 51.6, and numerous rulings and publications by the California Department of Justice and Civil Rights Department addressing how

Class Action Complaint for Damages and Injunctive Relief

businesses violate the Unruh Civil Rights Act when they treat consumers unequally based on their sex or gender identity, Ashley Madison continues to do just that – even going so far as brazenly flaunting in its Google Ads (see, e.g., paragraph 12(iii), above) its intentional discrimination of its subscribers and prospective subscribers based on their sex and gender identity.

22.     In the landmark Unruh Civil Rights Act sex-based price discrimination case of *Angelucci v. Century Supper Club* 41 Cal.4th 160, 167 (2007) the California Supreme Court, in ruling that a business could not charge women and men different cover charges to enter a Los Angeles supper club, perhaps best summarized the purpose and intent of the Act as follows:

> The Unruh Civil Rights Act (Civ. Code, § 51 et seq.) must be construed liberally in order to carry out its purpose. The act expresses a state and national policy against discrimination on arbitrary grounds. Its provisions are intended as an active measure that creates and preserves a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination by such establishments. The act stands as a bulwark protecting each person's inherent right to full and equal access to all business establishments (§ 51, subd. (b)). The act imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination. The act serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices.

23.     In the earlier and seminal California Supreme Court case on sex-based price discrimination of California consumers, *Koire v. Metro Car Wash.* 40 Cal.3d 24, 34-35 (1985), the Court explained at length how sex-based pricing practices that seemingly or ostensibly favor women over men actually harm both sexes:

> Moreover, differential pricing based on sex may be generally detrimental to both men and women, because it reinforces harmful stereotypes. (See Babcock et al., Sex Discrimination and the Law (1975) p. 1069; Note, *Washington's Equal*

---

Class Action Complaint for Damages and Injunctive Relief

*Rights Amendment and Law Against Discrimination -- The Approval of the Seattle Sonics' "Ladies' Night" (1983) 58 Wash. L. Rev. 465, 473.)*

Men and women alike suffer from the stereotypes perpetrated by sex-based differential treatment. (See Kanowitz, *"Benign" Sex Discrimination: Its Troubles and Their Cure (1980) 31 Hastings L.J. 1379, 1394;* Comment, *Equal Rights Provisions: The Experience Under State Constitutions (1977) 65 Cal.L. Rev. 1086, 1106-1107.)* When the law "emphasizes irrelevant differences between men and women[,] [it] cannot help influencing the content and the tone of the social, as well as the legal, relations between the sexes. . . . As long as organized legal systems, at once the most respected and most feared of social institutions, continue to differentiate sharply, in treatment or in words, between men and women on the basis of irrelevant and artificially created distinctions, the likelihood of men and women coming to regard one another primarily as fellow human beings and only secondarily as representatives of another sex will continue to be remote. When men and women are prevented from recognizing one another's essential humanity by sexual prejudices, nourished by legal as well as social institutions, society as a whole remains less than it could otherwise become." (Kanowitz, Women and the Law (1969) p. 4.)

Whether or not these defendants consciously based their discounts on sex stereotypes, the practice has traditionally been of that character.

24. Ashley Madison's favoritism of women over men has repudiated hundreds of years of women's struggle to be viewed as being equal to men. Not only has the California Supreme Court – twice in the above *Koire* and *Angelucci* opinions – expressed its disapproval of how ostensibly female-favored business practices such as practices that charge consumers different prices for the same thing based on the consumers' sex, or provide one sex certain advantages, privileges, or services that are denied members of the other, disfavored sex, the United States Supreme Court has similarly weighed in as well about "romantic paternalism" directed at women. In

Class Action Complaint for Damages and Injunctive Relief

*Frontiero v. Richardson*, 411 U.S. 677 (1973), the U.S. Supreme Court ruled the military must provide its female members with the same housing and medical benefits as it provides its male members. Justice William J. Brennan Jr. wrote that the military's unequal treatment of men and women is yet another example of one of those types of traditional sex discrimination that ostensibly appears to benefit women, but is "rationalized by an attitude of 'romantic paternalism' which, in practical effect, put women, not on a pedestal, but in a cage." *Id*. at p. 684.

25.    Ashley Madison's unequal and discriminatory treatment of men and women has caused discontent, animosity, harm, resentment, or envy among the sexes, constituted intentional, arbitrary, unreasonable, and/or invidious discrimination, and contravened California's historical effort and public policy to eradicate sex discrimination. Ashley Madison willfully and maliciously injured Plaintiff and class members by intentionally discriminating against them based on their sex and/or gender identity.

26.    In May of 2025, Plaintiff Allan Candelore, a heterosexual male who is and always has identified as a male, and was seeking women, visited Ashley Madison's website and other websites with the intent to use Ashley Madison's matchmaking services. During Mr. Candelore's visits to Ashley Madison's website and others' websites, Mr. Candelore encountered sex- and gender identity-based discriminatory terms and conditions against men and did not sign up as a member, user, or subscriber of Ashley Madison's services because of Ashley Madison's unequal treatment of and discrimination against men. See *White v. Square, Inc.,* 7 Cal.5th 1019, 1032 – 1033 (2019), that held, "We conclude that a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business."); *White v. Square, Inc*., 891 F.3d 1174 (9th Cir. 2018) (memorandum issued Sept. 23, 2019):

Class Action Complaint for Damages and Injunctive Relief

Plaintiff Robert E. White appeals the district court's dismissal of his claim under California's Unruh Act based on lack of statutory standing. According to White's complaint, White visited Square's website intending to use its services, encountered terms and conditions that allegedly denied him equal access to its services, and then left the website without entering into an agreement with Square. See *White v. Square, Inc.*, 891 F.3d 1174, 1175-1176 (9th Cir. 2018). The district court held that White lacked standing under the Unruh Act, and White appealed. Because California law in this area was unsettled, we certified a question respecting this issue to the California Supreme Court, see *White v. Square, Inc.*, 891 F.3d 1174, which subsequently responded, see *White v. Square, Inc.*, 7 Cal.5th 1019, 250 Cal.Rptr.3d 770, 446 P.3d 276 (2019) ["*White II*"].

Applying the California Supreme Court's ruling, the district court erred in concluding that White lacked statutory standing. White sufficiently alleged that he "visited the business's website, encountered discriminatory terms, and intended to make use of the business's services." See *White v. Square, Inc.*, 250 Cal.Rptr.3d 770, 446 P.3d at 283. **Accordingly, White has standing to pursue his Unruh Act claim**. Id. (Emphasis added.)

27.    By this action, Plaintiff seeks redress for Ashley Madison's unequal treatment of and intentional discrimination against Plaintiff and class members based on their sex and/or gender identity.

## CLASS ALLEGATIONS

28.    Plaintiff brings this class action on his own behalf and on behalf of all other persons similarly situated under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) as follows:

All subscribers to the Ashley Madison matchmaking service to whom Ashley Madison denied equal treatment, at any time these subscribers were in California, based on the subscribers' sex or gender identity during the period beginning on May 14, 2023 and continuing through the date of trial (the "Members Class.")

23

---

Class Action Complaint for Damages and Injunctive Relief

All persons who, while in California, visited Ashley Madison's app or website with the intent to use Ashley Madison's services, and encountered Ashley Madison's sex-based and gender identity-based discriminatory terms and conditions that denied these same persons full and equal access to Ashley Madison's services during the period beginning on May 14, 2023 and continuing through the date of trial (the "Intended Members Class"). The Members Class and the Intended Members Class are collectively referred to herein as the "Class."

29.     Not included in the Class are the following individuals and/or entities: Defendants and their respective parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entities in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; all judges and their staff members assigned to hear any aspect of this litigation, as well as such judges' immediate family members; and Plaintiff's counsel and anyone employed by Plaintiff's counsel.

30.     This action has been brought and may properly be maintained pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and (b)(3) for the below reasons:

(a)     The members of the proposed Class are so numerous it would be impracticable to join them all individually in a single action. The proposed Class is believed to number at least thousands of members. If the court determines notice to be necessary or appropriate, members of the proposed Class may be notified of the pendency of this action by mail and/or email, supplemented or substituted by published notice;

(b)     Common questions of law and fact exist as to all members of the proposed Class. These questions predominate over any questions that affect only individual members of the proposed Class. These common legal and factual questions include:

(1)     Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, nonbinary, and

Class Action Complaint for Damages and Injunctive Relief

transgender males full membership on the basis of their sex or gender identity unless they paid for full membership violates Civil Code section 51;

(2)    Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, nonbinary, and transgender males full membership for free on the basis of their sex or gender identity unless they paid for full membership violates Civil Code section 51.5;

(3)    Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, nonbinary, and transgender males full membership for free on the basis of their sex or gender identity unless they paid for full membership violates Civil Code section 51.6;

(4)    Whether Ashley Madison providing only females certain functionality while denying males full and equal functionality violates Civil Code section 51;

(5)    Whether Ashley Madison providing only females certain functionality while denying males full and equal functionality violates Civil Code section 51.5;

(6)    Whether persons who, while in California, visited an Ashley Madison website or app with the intent to use Ashley Madison's services, and encountered Ashley Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex or gender identity, were treated unequally in violation of Civil Code section 51; and

(7)    Whether persons who, while in California, visited an Ashley Madison website or app with the intent to use Ashley Madison's services, and while at an Ashley Madison website or app, encountered Ashley

25

Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex or gender identity, were discriminated against and/or blacklisted in violation of Civil Code section 51.5.

31.    Plaintiff's claims are typical of those of the proposed Class. Like the members of the proposed Class, Ashley Madison treated Plaintiff unequally based on his sex and/or gender identity. Based upon the Plaintiff and proposed Class's sex and/or gender identity, Ashley Madison (1) denied Plaintiff and the members of the proposed Class the equal accommodations, advantages, facilities, privileges, or services to which they are entitled under California Civil Code section 51; (2) discriminated against and/or blacklisted Plaintiff and the members of the proposed Class in violation of California Civil Code section 51.5; and (3) discriminated against Plaintiff and the members of the proposed Class in violation of California Civil Code section 51.6. Plaintiff and the members of the proposed Class are similarly situated and were similarly treated unequally, discriminated against, and blacklisted by the same course of unlawful conduct alleged herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the proposed Class. Plaintiff is a member of the proposed Class and has no interests adverse to the interests of the proposed Class. Plaintiff has been treated unequally because of his sex and gender identity as a result of Ashley Madison's above conduct, policies, and practices. This unequal treatment and harm to Plaintiff provides him with a substantial stake in this action and the incentive to prosecute it vigorously for himself and the proposed Class. Plaintiff has retained highly competent counsel experienced in prosecuting Civil Code sections 51, 51.5, and 51.6 class actions and individual claims for the unequal treatment, discrimination, and blacklisting of consumers by businesses based on consumers' sex and gender identity.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the litigation because individual joinder of all members of the

Class Action Complaint for Damages and Injunctive Relief

proposed Class is impracticable. The damages suffered by each individual member of the proposed Class are relatively small given the expense and burden of prosecuting an individual action. Thus, it would be virtually impossible for the members of the proposed Class to individually redress the wrongs done to them. Even if the members of the proposed Class themselves could afford such individual litigation, such litigation would constitute a highly avoidable inefficiency in the administration of justice by the courts.

34.    Also, individualized litigation presents the potential for inconsistent or contradictory judgments. Importantly, despite the many California statutes, California Supreme Court opinions, and State of California administrative agency publications addressing business practices that discriminate against consumers, many consumers still may not know that Ashley Madison's disparate treatment of them based on their sex or gender identity violates numerous California's anti-discrimination laws. And these consumers may not know that Ashley Madison's wrongs are subject to the rights and remedies mandated by Civil Code section 52.  A class action will right the wrongs inflicted on those many people who Ashley Madison discriminated against and who do not even know they have legally recognizable claims that provide for statutory damages, injunctive relief, and attorneys' fees awards.

35.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or have refused to act on grounds generally applicable to each of the classes, making appropriate declaratory, equitable, and injunctive relief with respect to Plaintiff and the Class Members as a whole. The Class Members in each of the two classes are entitled to declaratory, equitable, and injunctive relief to end Defendants' common, unfair, and unlawful discriminatory policies.

36.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members in the two classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since

Class Action Complaint for Damages and Injunctive Relief

joiner of all members is impracticable. The Class Members have been damaged and are entitled to recovery of statutory damages under California Civil Code section 52 because of Defendants' common, unfair, and discriminatory policies. Damages are capable of measurement on a classwide basis. Ashley Madison engages in continuous, permanent, and substantial activity in California. There will be no undue difficulty in the management of this litigation as a class action.

## FIRST CAUSE OF ACTION

### Violation Of The Unruh Civil Rights Act, California Civil Code Section 51
### Denial Of Equal Treatment Based On Sex

37.   Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

38.   Ashley Madison is a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code section 51).

39.   By virtue of Ashley Madison's acts and omissions in allowing only females seeking males to have full membership for free, while denying males full membership unless they first purchase credits, Ashley Madison has intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.

40.   Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

41.   In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from continuing its discriminatory actions as alleged above. Plaintiff and members of the proposed Class are entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## SECOND CAUSE OF ACTION

### Violation Of The Unruh Civil Rights Act, California Civil Code Section 51

### Denial Of Equal Treatment Based On Gender Identity

42.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

43.    Ashley Madison is a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code section 51).

44.    By virtue of Ashley Madison's acts and omissions in allowing only people who identify as women to have full membership for free, while denying people who identify as men full membership unless they first purchased credits, Ashley Madison intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their gender identity, which is prohibited by Civil Code section 51.

45.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

46.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from continuing its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## THIRD CAUSE OF ACTION

### Violation Of California Civil Code Section 51.5

### Discrimination Based On Sex

47.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

48.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

29

49.    By virtue of Ashley Madison's acts and omissions in allowing only females seeking males to have full membership for free, while denying males full membership unless they first purchased credits, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.5.

50.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

51.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

**FOURTH CAUSE OF ACTION**

**Violation Of California Civil Code Section 51.5**

**Discrimination Based On Gender Identity**

52.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

53.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

54.    By virtue of Ashley Madison's acts and omissions in allowing only people who identify as women to have full membership for free, while denying people who identify as men full membership unless they first purchased credits, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their gender identity, which is prohibited by Civil Code section 51.5.

55.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code

section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

56.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to injunctive relief on behalf of himself, the Class, and the general public.

## FIFTH CAUSE OF ACTION

### Violation Of California Civil Code Section 51.6

### Price Discrimination Based On Gender

57.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

58.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.6.

59.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying men full membership unless they first purchased credits, Ashley Madison discriminated with respect to the price charged for services of similar or like kind because of Plaintiff and the proposed Class's gender, which is prohibited by Civil Code section 51.6.

60.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

61.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

Class Action Complaint for Damages and Injunctive Relief

## SIXTH CAUSE OF ACTION

### Violation Of California Civil Code Section 51

### Discrimination Based On Sex

62.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

63.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.

64.    By virtue of Ashley Madison's acts and omissions in offering certain functionality to only female users as referenced herein, Ashley Madison intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.

65.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

66.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## SEVENTH CAUSE OF ACTION

### Violation Of California Civil Code Section 51.5

### Discrimination Based On Sex

67.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

68.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

69.     By virtue of Ashley Madison's acts and omissions in offering certain functionality to only female users as referenced herein, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.5.

70.     Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

71.     In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of himself and the members of the Class:

1. Public injunctive relief in the form of a preliminary and permanent injunction against Defendants and the officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the discriminatory policies, practices, customs, and usages set forth herein;

2. Certify a class under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil procedure, appoint Plaintiff's counsel as Class Counsel, and appoint the named Plaintiff as the Class representative;

3. For statutory damages of $4,000 for each and every offense Defendants committed against each member of the Class pursuant to Civil Code section 52;

Class Action Complaint for Damages and Injunctive Relief

4. For costs incurred herein, including attorneys' fees to the extent allowable by statute, including by Civil Code sections 52 and Code of Civil Procedure section 1021.5; and

5. For such other and further relief as this court may deem proper.

Dated: May 16, 2025                                      Respectfully Submitted

                                                        /s Alfred G. Rava
                                                        Alfred G. Rava (Cal. Bar No. 188318)
                                                        RAVA LAW FIRM
                                                        3667 Voltaire Street
                                                        San Diego, California 92106
                                                        Phone: 619-238-1993
                                                        E-mail: alrava@ravalaw.com
                                                        *Attorney for Plaintiff Allan Candelore and the Proposed Classes*